UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

```
CURTIS 1000, INC., a Georgia      )
Corporation,                      )
                                  )
        Plaintiff,                )
                                  )
v.                                )
                                  ) No. 3:04-1000
GEORGE B. MARTIN and DAVID L.     ) JUDGE ECHOLS
BEAN, individually, and           )
AMERICAN BUSINESS FORMS, d/b/a    )
American Solutions for Business,  )
Inc., a Minnesota Corporation,    )
                                  )
        Defendants.                )
```

### MEMORANDUM

Pending before the Court is George B. Martin's and David L. Bean's Motion to Vacate Preliminary Injunction At Expiration of Contract Period (Docket Entry No. 128), to which Plaintiff Curtis 1000, Inc. has filed a response (Docket Entry No. 130), and David L. Bean has filed a reply (Docket Entry No. 133) and the Sixth Circuit opinion (Docket Entry No. 131).

The Motion was filed on July 27, 2006, just days before the United States Court of Appeals for the Sixth Circuit issued its opinion affirming in part and reversing in part this Court's Order and Memorandum signed and dated on March 3, 2005, imposing a preliminary injunction against individual Defendants George B. Martin and David L. Bean and Defendant American Business Forms, d/b/a American Solutions for Business ("ASB"). Curtis 1000, Inc.

1

v. Martin, 2006 WL 2252639 (6th Cir. Aug. 4, 2006). The Sixth Circuit reversed this Court's grant of a preliminary injunction against Defendant Martin and Defendant ASB to the extent the preliminary injunction involved ASB's business relationship with Defendant Martin.

In light of the Sixth Circuit's opinion, Defendant Martin's motion to vacate the preliminary injunction imposed against him will be GRANTED *nunc pro tunc* to August 4, 2006, the date of the Sixth Circuit's decision. Likewise, the preliminary injunction imposed against ASB concerning its business relationship with Defendant Martin will be VACATED *nunc pro tunc* to August 4, 2006.

Remaining for the Court's consideration is whether the terms of the preliminary injunction imposed against Defendant Bean should remain in full force and effect for two years after the termination of his employment with Curtis 1000 on September 17, 2004, or for two years after entry of the Temporary Restraining Order ("TRO") against Defendant Bean on November 19, 2004.[1]

---

[1] At the time the Motion was made in late July 2006, Defendant Bean sought termination of the preliminary injunction as of September 17, 2006, which was two years after he terminated his employment with Curtis 1000. Because the Court concludes that the preliminary injunction should remain in effect until November 19, 2006, it is irrelevant that September 17 has already passed.
  Curtis 1000 requests that the preliminary injunction remain in full force and effect until November 29, 2006, which is the date Curtis 1000 claims is two years after the TRO against Defendant Bean became effective by entry on the docket of the written TRO. Curtis 1000 misconstrues the effective date of the TRO. The written Order explicitly states that the TRO "took effect immediately upon conclusion of the hearing on November 19, 2004,

2

## I. ANALYSIS

In connection with his employment, Defendant Bean signed an "Agreement" with Curtis 1000 on July 9, 1986. In paragraph 5 of that Agreement, entitled "RESTRICTIVE COVENANTS," Bean promised that he would not call upon and solicit Curtis 1000 customers or disclose to others confidential Curtis 1000 information "for a period of two years immediately following the termination of his employment[.]" Bean contends that, under the plain language of the contract, the two-year period began to run when he terminated his Curtis 1000 employment on September 17, 2004, and consequently, the covenant expired on September 17, 2006. No other result can be reached, he argues, because the contract does not include a tolling provision, and the contract language must be read in his favor with any ambiguity construed against Curtis 1000, the contract drafter. See Allright Auto Parks, Inc. v. Berry, 409 S.W.2d 361, 365 (Tenn. 1966); B & L Corp. v. Thomas & Thorngren, Inc., 917 S.W.2d 674, 678 (Tenn. Ct. App. 1996).[2]

Curtis 1000 seeks the full benefit of the two-year non-compete period to which Bean agreed. The company contends Bean began

---

when the Court made its ruling on the record in open court, and this written Order is effective retroactively to the time of such ruling." (Docket Entry No. 41, TRO at 9, ¶ 9.) Accordingly, the two-year period cannot extend beyond November 19, 2006.

[2]The Court will analyze Bean's Agreement only under Tennessee law in accordance with the Sixth Circuit's decision. Curtis 1000, Inc., 2006 WL 2252639 at *5-6.

3

competing as ASB's new salesman before he left Curtis 1000's employment on September 17, 2004, until November 19, 2004, the date Curtis 1000 obtained a TRO to restrain Bean's unfair competition. Thus, according to Curtis 1000, the two-year non-compete period should be measured from the date of the TRO.

To support this position, Curtis 1000 relies primarily on cases published in other jurisdictions in which federal and state courts granted precisely the type of equitable relief Curtis 1000 seeks here. See e.g. Overhold Crop Ins. Serv. Co. v. Travis, 941 F.2d 1361, 1372 (8th Cir. 1991); Premier Indus. Corp. v. Texas Indus. Fastner Co., 450 F.2d 444, 448 (5th Cir. 1971); PADCO Advisors, Inc. v. Omdahl, 185 F.Supp.2d 575, 578 (D. Md. 2002); Thermatool Corp. v. Borzym, 575 N.W.2d 334, 375 (Mich. Ct. App. 1998); Presto-X Co. v. Ewing, 442 N.W.2d 85, 90 (Iowa 1989). Curtis 1000 cites two cases from Tennessee: Central Adjustment Bureau v. Ingram, 678 S.W.2d 28, 37 (Tenn. 1984), and Nylon Net Co., Inc. v. Amore, 1986 WL 9198 at *5 (Tenn. Ct. App. 1986) (unpublished).

In Ingram the Supreme Court of Tennessee held in part that a court in equity may judicially modify a non-competition agreement to enforce it on reasonable terms. Ingram, 678 S.W.2d at 35-37. The Supreme Court upheld the Chancellor's decisions to reduce the length of a non-compete agreement from two years to one year and to prohibit defendant's contact only with those customers doing

4

business with the company as of a certain recent date, rather than with all customers who conducted business with the company during the entire period of the defendant's employment. Id. at 36.

Curtis 1000 does not ask the Court to change the length of Bean's non-competition agreement or to limit or expand any of the other terms of the contract. Thus, Ingram is not apposite to the task at hand. The company asks the Court to decide the date from which the two-year non-compete period runs. Although Amore is an unpublished case, it is instructive in resolving the question presented.[3]

In Amore, a non-competition agreement prohibited the defendant from soliciting customers or otherwise competing "within one year after leaving the service of the [employer]" or "for one year after leaving the employ of the [employer][.]" Amore, 1986 WL 9198 at *1. The defendant, Amore, resigned his employment in August 1984 and began competing in violation of his agreement. The former employer, Nylon Net Company, obtained a temporary injunction against Amore on March 1, 1985. It remained in effect until the

---

[3]The Rules of the Court of Appeals of Tennessee do not prohibit consideration of the content of an unpublished opinion. Rather, Rule 12 provides: "No opinion of any court that has not been published shall be cited in papers filed in [the Court of Appeals] unless a copy thereof has been furnished to [the Court of Appeals] and to adversary counsel. Such unpublished opinions shall be included as appendices to any brief or other paper filed with [the Court of Appeals].
Likewise, this Court may consider an unpublished opinion of the Tennessee Court of Appeals pursuant to Local Rule 7.01(e)(5).

5

Chancellor granted a permanent injunction, with additional terms, on July 8, 1985, to run one year from the date of issue of the temporary injunction. Id. at *1-2. The Court of Appeals granted a stay pending appeal on August 13, 1985, and thus, Amore was not subject to the non-competition agreement while the appeal was pending for approximately one year. Id.

The Tennessee Court of Appeals modified and affirmed the injunction. Id. at *5. The court observed that Amore was unrestrained by the covenant not to compete during the first six months of his new employment until Nylon Net obtained a temporary injunction. Thereafter, Amore was restrained for five and one-half months by the temporary injunction, but Amore then benefited from the stay of the permanent injunction pending appeal. Id. at *4. To give Nylon Net Company the full benefit of its one-year non-compete period, the Tennessee Court of Appeals decreed that the modified permanent injunction would be in effect for six and one-half months from the date of the appellate decision "so as to result in enforcement of the covenant for a total of one year." Id. at *5.

Bean correctly states that Amore has not been cited by any court since its issuance. However, the Court does not accept Bean's characterization of Amore as "an anomaly, without any other basis of support in the law." (Docket Entry No. 133, Reply Brief at 4.) Numerous published cases in other federal and state

6

jurisdictions, many of them cited by Curtis 1000, support the principle followed in Amore.

Neither party has cited any reported Tennessee case that is on all fours with the issue presented here, and the Court has not located such a case. Bean cites Ramsey v. Mutual Supply Co., 427 S.W.2d 849 (Tenn. Ct. App. 1968), for the proposition that "[a]s a general matter, Tennessee courts assume injunctions should be measured from the date of termination." (Docket Entry No. 129, Memorandum of Law at 5.) Having carefully read Ramsey, the Court is unable to locate any language in the opinion that directly supports defendant's statement.

Additionally, while Bean may criticize Amore for a lack of analysis, the policy underlying the decision is sound. "Equity demands that employees not be rewarded for breaching the terms of a covenant not to compete." Pro Edge L.P. v. Gue, 411 F.Supp.2d 1080, 1092 (N.D. Iowa 2006). Thus, the Court concludes a result like that reached in Amore and the similar cited cases is warranted here.

Bean was contractually obligated to refrain from competing with Curtis 1000 "for a period of two years immediately following the termination of his employment[.]" The evidence presented at the preliminary injunction hearing established that Bean associated with ASB within one week after terminating his employment with Curtis 1000 on September 17, 2004, yet he began calling upon and

7

soliciting Curtis 1000's customers before his employment with Curtis 1000 ended. Bean's conduct in violation of the covenant continued unrestrained for 63 days until Curtis 1000 obtained a TRO on November 19, 2004. The TRO was later converted to a preliminary injunction on March 3, 2005.

Bean asks the Court to rule, in effect, that the two-year meter on his covenant not to compete was running during the 63-day period he was in breach. The Court will not so hold. To measure the two-year non-compete period from the date Bean left his employment with Curtis 1000 on September 17, 2004, would condone Bean's breach of the covenant and approve the benefit he gained from unfair competition during the period of time it took for Curtis 1000 to uncover Bean's breaching conduct and to marshal legal resources to obtain a TRO in restraint of such conduct. To avoid this prospect, the Court concludes that the two-year non-compete period began to run on the effective date of the TRO, November 19, 2004. See <u>Amore</u>, 1986 WL 9198 at *4-5 (calculating one-year covenant period starting with date of TRO); <u>PADCO Advisors, Inc.</u>, 185 F.Supp.2d at 578 ("It is reasonable for PADCO to expect the full twenty-four months of non-competition to which it is entitled[.]").

Bean complains that ruling in favor of Curtis 1000 on this issue essentially writes a new contract for the parties. The Court has not rewritten a single term to which the parties agreed.

8

Rather, the Court exercises its equitable power to provide Curtis 1000 with the benefit of its contractual bargain.

Accordingly, the terms of the preliminary injunction, as they apply to Defendants Bean and ASB, will remain in full force and effect until November 19, 2006.

## II. CONCLUSION

In light of the Sixth Circuit's opinion, Defendant Martin's motion to vacate the preliminary injunction will be granted *nunc pro tunc* to August 4, 2006. The preliminary injunction imposed against ASB, as it pertains to ASB's business relationship with Defendant Martin, will also be vacated *nunc pro tunc* to August 4, 2006.

Defendant Bean's motion to vacate will be denied. A holding by the Court that the two-year non-compete period began to run on the date Bean left Curtis 1000's employment would unfairly reward Bean for breaching his covenant not to compete. Equity is done if the two-year period is measured from the effective date of the TRO, November 19, 2004. Accordingly, both Bean and ASB will remain subject to all of the terms of the preliminary injunction until November 19, 2006.

An appropriate Order shall be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE